UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LENNAR NORTHEAST PROPERTIES, INC. d/b/a LENNAR NORTHEAST URBAN and LENNAR HINGHAM HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BARTON PARTNERS ARCHITECTS PLANNERS INC., BUILDING ENGINEERING RESOURCES, INC., HIGHLAND CARPENTRY, INC., US FRAMING INC. USFNE LLC, F.M. HOME IMPROVEMENT, INC., and ARCHER EXTERIORS, INC.,<br><br>Defendants,<br><br>F.M. HOME IMPROVEMENT, INC.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>YUNGA BROTHERS CONSTRUCTION, LLC,<br><br>Third-Party Defendant. | * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * | Civil Action No. 16-cv-12330-ADB |

**MEMORANDUM AND ORDER ON DEFENDANT
F.M. HOME IMPROVEMENT, INC'S MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff Lennar Northeast Properties, Inc., d/b/a Lennar Northeast Urban and Plaintiff Lennar Hingham Holdings, LLC (collectively, "Plaintiffs") filed this action seeking damages

arising from the allegedly defective construction of a condominium project in Hingham, Massachusetts.

Currently before the Court is Defendant F.M. Home Improvement, Inc.'s ("F.M. Home") motion for partial summary judgment.[1] [ECF No. 108]. Because the amended complaint, [ECF No. 82], seeks damages only for claims that sound in tort and the claims regarding defects in Building 3 and Building 20 are barred by the Statute of Repose, the motion for partial summary judgment, [ECF No. 108], is GRANTED.

I.  BACKGROUND

A.  Procedural History

Plaintiffs initially filed this action on November 18, 2016, alleging construction defects at Hewitts Landing Condominium in Hingham, Massachusetts ("the Condominium"). [ECF No. 1; ECF No. 121 at 1]. Plaintiffs amended their complaint on April 29, 2019, to add F.M. Home as a defendant. [ECF No. 82]. F.M. Home answered on June 11, 2019, [ECF No. 89], and filed a third-party claim against its sub-contractor, Yunga Brothers Construction, LLC, on June 24, 2019, [ECF No. 94].

B.  Factual Summary

The following facts are either uncontroverted pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, or stated in the light most favorable to the non-movant on each issue. The Condominium was designed by Barton Partners Architects Planners Inc. and engineered by Building Engineering Resources Inc. [ECF No. 82 ¶ 1]. Highland Carpentry Inc., U.S. Framing

---

[1] On August 17, 2020, the parties informed the Court that Plaintiffs have reached a settlement with F.M. Home, [ECF No. 213 at 1], but no formal stipulation of dismissal has been filed to date. Given that the motion remains pending and that the parties have stated that other defendants are intending to raise the same issue, the Court believes it proper to rule on the motion.

Inc., USFNE LLC, Archer Exteriors Inc., and F.M. Home were subcontracted to work on certain aspects of the twenty-eight buildings that make up the Condominium. [Id. ¶ 23; ECF No. 122 ¶¶ 2, 4–5].

In June 2012, Plaintiffs entered into a Trade Partner Agreement with F.M. Home (the "Agreement"), which provided that F.M. Home would indemnify Plaintiffs for any damages arising from or relating to any of its work as follows:

> TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW . . . [F.M. HOME] AGREES TO UNCONDITIONALLY DEFEND, INDEMNIFY AND HOLD HARMLESS [LENNAR] . . . AGAINST ANY AND ALL CIVIL OR CRIMINAL LIABILITIES . . . AND DAMAGES (INCLUDING COURT COSTS, ATTORNEYS' FEES AND PARAPROFESSIONAL FEES, AND COSTS OF INVESTIGATION), OF ANY NATURE, KIND, OR DESCRIPTION, ARISING OUT OF, IN CONNECTION WITH, CAUSED BY, ALLEGED TO HAVE BEEN CAUSED BY, OR RESULTING FROM, DIRECTLY OR INDIRECTLY, IN WHOLE OR IN PART, (1) THE WORK, LABOR, MATERIALS, EQUIPMENT, OR SERVICES PERFORMED OR SUPPLIED BY OR ALLEGED TO HAVE BEEN PERFORMED OR SUPPLIED BY SUBCONTRACTOR OR ANY OF ITS SUB-SUBCONTRACTORS, (2) ANY ACT OR OMISSION OF SUBCONTRACTOR OR ANY OF ITS SUB-SUBCONTRACTORS, OR (3) ANY ACT OR OMISSION OF CONTRACTOR OR CONTRACTOR'S OTHER SUBCONTRACTORS, SUB-SUBCONTRACTORS OR SUPPLIERS OR ANY OF THEIR EMPLOYEES, AGENTS, INVITEES OR ANY PERSON ACTING BY, THROUGH OR UNDER CONTRACTOR OR CONTRACTOR'S OTHER SUBCONTRACTORS, SUB-SUBCONTRACTORS OR SUPPLIERS (COLLECTIVELY, "LIABILITIES").

[ECF No. 122 ¶ 8].

Plaintiffs allege that F.M. Home failed to properly install siding and trim at the Condominium. [ECF No. 82 ¶ 25]. This resulted in noticeable gaps in sheathing that F.M. Home covered in siding and allowed air to penetrate the building's pressurized fire sprinkler pipes which caused them to freeze and rupture, resulting in approximately $242,636.71 in property damage. [ECF No. 122 ¶¶ 10, 12–13].

F.M. Home argues that the cause of action is precluded by the Statute of Repose because Plaintiffs are seeking "damages arising out of any deficiency or neglect in the design, planning, construction, or general administration of an improvement to real property." [ECF No. 109 at 2 (quoting Mass. Gen. Laws ch. 260, § 2B)].

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the movant can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A fact is material if its resolution might affect the outcome of the case under the controlling law.  A genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must point to "specific evidence in the record that would be admissible at trial." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015).  "That is, it must 'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Id. at 4–5 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).  Once the movant takes the position that the record fails to make out any trial-worthy question of material fact, "it is the burden of the nonmoving party to proffer facts

sufficient to rebut the movant's assertions." Nansamba v. N. Shore Med. Ctr., Inc., 727 F.3d 33, 40 (1st Cir. 2013) (citing Golf Coast Bank & Tr. Co. v. Reder, 355 F.3d 35, 39 (1st Cir. 2004)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 5. The First Circuit has noted that this standard "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 47 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 396 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 5 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Medina-Munoz, 896 F.2d at 8 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50 (1986)).

**III. DISCUSSION**

The Statute of Repose bars any "[a]ction of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property" filed "more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner." Mass. Gen. Laws ch. 260, § 2B. "Simply put, after six years, the statute completely eliminates a cause of action against certain persons in the construction industry." Klein v. Catalano, 437 N.E.2d 514, 516 (Mass. 1982). The Legislature enacted the statute "to limit the liability of architects, engineers, contractors, or others involved in the design, planning, construction, or general administration of an improvement to real

5

property." Id. at 526.  The parties disagree about whether Plaintiffs' claims are a tort action or a claim for indemnification under the contract.  [ECF No. 109 at 4–5 ("[E]ach and every cause of action asserted against F.M. Home, which is a member of the class afforded protection under the statute, is either a tort per se, tort-like in nature, or derivative of those tort claims and arising from the alleged deficiency and/or construction of the Condominium."); ECF No. 121 at 5 ("Although the Statute of Repose bars tort claims relating to construction deficiencies, . . . it does not bar claims for indemnification arising from construction contracts.")].

The Statute of Repose does not preclude an action under contract for indemnification. See A.C. Moore Arts & Crafts, Inc. v. Fellsway Plaza, LP, No. 04-cv-4170, 2007 WL 3260987, at *2 (Mass. Super. Ct. Oct. 9, 2007) ("The Statute of Repose does not bar action on the basis of an indemnification agreement.").  In Gomes v. Pan American Associates, for example, the Supreme Judicial Court of Massachusetts ("SJC") found that a defendant could bring a third-party claim for indemnity against an architect when a shopper was injured at the defendant third-party claimant's mall.  549 N.E. 2d 1134, 1135 (Mass. 1990).  The court explained that "[t]he gist of Pan Am's action is essentially contractual—the enforcement of a contract of indemnification.  The language of the indemnification provision is overwhelmingly contractual.  The language of [chapter 260,] § 2B is exclusively directed to tort actions."  Id.; see Catalano, 437 N.E.2d at 525 (explaining that § 2B "expressly provides a limitation only for actions of tort" and "does not apply to contract actions").

The mere fact, however, that the contract included an indemnification provision is insufficient to make this an action for indemnification, as opposed to a tort action.  "Where a claim does not obviously sound in tort, [the Court must] examine[] the nature of the underlying

action to determine whether a statute of repose applies." Bridgwood v. A.J. Wood Constr., Inc., 105 N.E.3d 224, 229 (Mass. 2018).

### A. Plaintiffs Filed Their Amended Complaint More Than Six Years After the Openings of Building 3 and Building 20

The Statute of Repose "precludes recovery against those within its purview for any injury that occurs 'more than six years after the earlier of the dates of (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession or occupancy by the owner." Aldrich v. ADD, Inc., 770 N.E.2d 447, 454 (Mass. 2002) (citing Mass. Gen. Laws ch. 260, § 2B). Actors protected by the Statute of Repose cannot be added to the complaint by way of "relation back" to the date of the filing of the original complaint. See Fine v. Huygens, DiMella, Shaffer & Assocs., 783 N.E.2d 842 (Mass. App. Ct. 2003); see also Mass. Gen. Laws ch. 260, § 2B.

In this case, it is undisputed that the Town of Hingham issued Occupancy Certificates for two of the buildings, Building 3 and Building 20, on or before November 1, 2012. [ECF No. 122 ¶ 3]. Plaintiffs did not amend their complaint to include F.M. Home until April 29, 2019. Therefore, the Statute of Repose precludes a tort action brought for damages related to F.M. Home's services in connection with Building 3 and/or Building 20.

### B. The Statute of Repose as Applied to Plaintiffs' Claims

The amended complaint seeks to compel arbitration (Count I) and alleges damages for breach of contract (Count II), breach of warranty (Count III), negligence (Count IV), and violation of Massachusetts General Laws Chapter 93A (Count V). [ECF No. 82 ¶¶ 32–51]. The Plaintiffs argue that this is a breach of contract action for damages under the Agreement's indemnification provision and not a tort action. See [ECF No. 121 at 2]; see, e.g., A.C. Moore Arts & Crafts, Inc., 2007 WL 3260987, at *2 (finding that "[t]he defense . . . that the Statute of

7

Repose bars the claims against [the defendant] does not apply to the contractual indemnification" claim).

The Court notes that the amended complaint does not make any reference to the specific contractual indemnification provision or indemnification more generally. See [ECF No. 82]. Still, in determining whether the Statute of Repose applies to a claim, the Court is directed to "read the complaint by its gist, rather than its label." Kingston Hous. Auth. v. Sandonato & Bogue, Inc., 577 N.E.2d 1, 3 (Mass. App. Ct. 1991). Therefore, the Court must consider each individual count to determine whether it was brought as an action for indemnification under contract or as a tort action.

      1.    Negligence

In Count IV, Plaintiffs seek damages for F.M Home's negligence, alleging that "[e]ach Subcontractor owed a duty of care to Lennar to meet the standards of care applicable to reasonably prudent members of the construction profession." [ECF No. 82 ¶ 45]. Plaintiffs further allege that,

> [b]y its wrongful and unauthorized conduct described above, each Defendant breached its respective duty to Lennar, proximately causing Lennar's injuries described herein. As a direct and proximate result, Lennar has suffered and/or has incurred, and is entitled to recover, actual and economic damages, out of pocket costs, pre- and post-judgment interest, and court costs.

[Id. ¶ 46].

The Statute of Repose plainly precludes a negligence action for alleged deficiencies in F.M. Home's construction performance. See Mass. Gen. Laws ch. 260, § 2B (requiring that "[a]ction of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property" be brought no more than six years after the "the earlier of the dates of: (1) the opening of the improvement to use; or

8

(2) substantial completion of the improvement and the taking of possession for occupancy by the owner"); see, e.g., White v. Superior Oil, Inc., No. 05-cv-00120, 2005 WL 1667439, at *3 (Mass. Super. Ct. June 9, 2005) (dismissing a negligence claim that was brought over six years from the time that the defendant completed its work under the Statute of Repose); Dicorato v. Procopio Constr. Co., Inc., No. 99-cv-03906, 2002 WL 31677205, at *1 (Mass. Super. Ct. Oct. 31, 2002) ("Since the negligence claim against Procopio is plainly a tort cause of action for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property, the statute of repose has barred this claim since late autumn in 1984." (internal quotation marks omitted)).  Count IV must therefore be dismissed as against F.M. Home insofar as it seeks damages related to Building 3 and/or Building 20.

2. Breach of Contract and Breach of Warranty

In Counts II and III, Plaintiffs seek damages arising from F.M. Home's alleged breaches of contract (Count II) and warranty (Count III).  [ECF No. 82 ¶¶ 34–41].  F.M. Home argues that the breach of contract and breach of warranty claims are simply negligence claims that must be dismissed under the Statute of Repose.  [ECF No. 109 at 7].  "A key difference between an action in tort and an action in contract is that in the latter, 'the standard of performance is set by the defendants' promises, rather than imposed by law.'"  Bridgwood, 105 N.E.3d at 230 (quoting Anthony's Pier Four, Inc. v. Crandall Dry Dock Eng'rs, Inc., 489 N.E.2d 172, 175 (Mass. 1986)).

Courts have treated claims for breach of an implied warranty as though they were negligence claims, which sound in tort, and dismissed them as untimely.  See Rosario v. M.D. Knowlton Co., 767 N.E.2d 1126, 1132 (Mass. App. Ct. 2002) ("Although § 2B expressly applies

9

only to actions of tort, Massachusetts courts have held that actions for breach of implied warranty are also barred by the statute of repose when the warranty claims 'essentially allege the same elements as the negligence claims.'" (quoting McDonough v. Marr Scaffolding Co., 591 N.E.2d 1079, 1083 (Mass. 1992))). "If the plaintiff could maintain his action for breach of implied warranty, the statute would not have its intended effect. The plaintiff whose negligence claim is barred by G.L. c. 260, § 2B, could bring essentially the same action under a breach of implied warranty theory." Catalano, 437 N.E.2d at 526.

A breach of warranty claim, however, that does not just allege that the defendant breached the duty to perform with the skill and judgment reasonably expected from similarly situated professionals may continue despite the Statute of Repose. Catalano, 437 N.E.2d at 526 ("We add that an architect may provide an express warranty of a certain result. In that event, the plaintiff may maintain an action for breach of express warranty."). "Because the standard of performance is set by the defendant's promises, rather than imposed by law, an express warranty claim is and generally has been understood to be an action of contract, rather than of tort." Anthony's Pier Four, 489 N.E.2d at 175. Therefore, if a plaintiff can demonstrate that the defendant promised a specific result, as opposed to simply promising that they would "exercise the standard of reasonable care required of members of [their] profession," then the warranty claim is not barred by the Statute of Repose. Id. (alteration in original). "A plaintiff may not . . . escape the consequences of a statute of repose . . . on tort actions merely by labelling the claim as contractual." Id. In determining the nature of the claim, "the court must look to the 'gist of the action.'" Id. (quoting Hendrickson v. Sears, 310 N.E.2d 131, 132 (Mass. 1974)).

In this case, Plaintiffs allege that they had a "valid and enforceable agreement" with F.M. Home, which F.M. Home "materially breached" by its "wrongful conduct . . . ." [ECF No. 82

10

¶ 35]. Plaintiffs claim that Defendants breached both implied and express warranties. With regard to the implied warranties, Plaintiffs maintain that "[b]y its wrongful and unauthorized conduct described above, each Defendant breached its respective implied warranty to perform its work on the Project in a workmanlike manner and to use reasonable and appropriate care and skill." [Id. ¶ 37]. As to the alleged express warranties, Plaintiffs claim that "each Subcontractor breached its express warranties, including the warranty to perform its work in a good and workmanlike manner, free from defects in workmanship and materials, and in strict accordance with (i) the plans and specifications, (ii) any applicable manufacturer's specifications, recommendations or requirements, and (iii) all applicable industry standards, codes, or other rules or regulations applicable to the performance of the work." [Id. ¶ 40].

Plaintiffs' allegations essentially mirror those that would otherwise be brought in tort, namely, that F.M. Home failed to perform its contract with the standard of care of a subcontractor in the industry. Counts II and III are therefore tort claims barred by the Statute of Repose and must be dismissed to the extent they seek damages related to F.M. Home's work on Building 3 and/or Building 20. See, e.g., McDonough, 591 N.E.2d at 1083 ("The plaintiffs' breach of warranty claims essentially allege the same elements as the negligence claims, and, hence, the warranty claims are barred by the statute of repose as well.").

### 3. Massachusetts General Laws Chapter 93A

In Count V, Plaintiffs allege that F.M. Home engaged "in conduct that was an unfair method of competition and that involved unfair and deceptive actions." [ECF No. 82 ¶ 50]. F.M. Home argues that Plaintiffs' 93A claim must also be dismissed under the Statute of Repose because it is, in essence, a tort action seeking recovery for alleged defects. [ECF No. 109 at 9–10]. Plaintiffs do not make any argument concerning their 93A claim, beyond the general

claim that the complaint is brought as an action for contractual indemnification. See [ECF No. 121]. In determining whether Plaintiffs' 93A claim is barred by the Statute of Repose, the Court again looks to the "gist of the action" to determine whether the Statute applies. Bridgwood, 105 N.E.3d at 230.

Massachusetts courts, including the SJC, have found that where the underlying cause of action sounds in tort, the Statute of Repose bars a 93A claim because the derivative claims are "sufficiently tort-like to bring them within the statute's ambit." Bridgwood, 105 N.E.3d at 230. In Kelley v. Iantosca, for example, the Appeals Court of Massachusetts held that the plaintiff's 93A claim was barred to the extent that it focused on the defendants' alleged acts or omissions during the construction process. 935 N.E.2d 783, 789 (Mass. App. Ct. 2010); see also Bridgwood, 105 N.E.3d at 231 ("[Plaintiff's] claim is essentially that the defendants failed to perform the electrical work in compliance with the standards set forth in G. L. c. 142A, § 17(10). It is indistinguishable from a claim of negligence. Therefore, it sounds in tort and, having been commenced well beyond the six-year deadline, is barred by G. L. c. 260, § 2B.").

Plaintiffs allege that "[e]ach Defendant engaged in conduct that was an unfair method of competition and that involved unfair and deceptive actions. Said practices and actions . . . resulted in a loss to Lennar's business, including, but not limited to, actual and economic damages and out of pocket costs. Defendants' practice and actions constituted willful and knowing violations within the meaning of M.G.L. c. 93A Sec. 11." [ECF No. 82 ¶¶ 50–51].

The amended complaint, however, does not allege facts beyond F.M. Home failing to properly install siding and trim. See [ECF No. 82 ¶ 25 (claiming that F.M. Home "failed to properly install sheathing on large sections of the buildings and failed to close and tape large gaps between the sheathing boards, leaving a deficient and unsealed exterior envelope on the

buildings" of the Condominium)].  The Court is therefore unable to find that the complaint alleges a violation of 93A beyond the elements of a negligence claim.  Contra D'Allessandro v. Lennar Hingham Holdings, LLC, No. 17-cv-12567, 2019 WL 5550629, at *4 (D. Mass. Oct. 28, 2019) ("Plaintiff here alleges that, above and beyond any acts or omissions during the construction of the Condominium, Lennar engaged in misrepresentation and unfair business practices in representing the property to prospective buyers.  Because these claims against the seller of the property arise from distinct facts and allege distinct wrongdoing from a negligence action against architects and builders, the claims are not subject to repose under the statute." ).  Therefore, to the extent that Count V seeks damages related to Building 3 and/or Building 20, the claim is untimely under the Statute of Repose and must be dismissed.

## IV.    CONCLUSION

Accordingly, insofar as the claims of negligence, breach of contract, breach of warranty, and a violation of Chapter 93A as alleged in the amended complaint, [ECF No. 82], seek damages stemming from F.M. Home's work on Building 3 and/or Building 20, the claims sound in tort and are barred by the Statute of Repose.  The motion for partial summary judgment, [ECF No. 108], is therefore GRANTED.

**SO ORDERED.**

January 22, 2021                                          /s/ Allison D. Burroughs  
                                                                    ALLISON D. BURROUGHS  
                                                                    U.S. DISTRICT JUDGE