UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LENNAR NORTHEAST PROPERTIES, INC. d/b/a LENNAR NORTHEAST URBAN, and LENNAR HINGHAM HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BARTON PARTNERS ARCHITECTS PLANNERS INC., et al., <br><br> Defendants. | * * * * * * * * * * * * * * * | Civil Action No. 16-cv-12330-ADB |

## **MEMORANDUM AND ORDER ON MOTIONS IN LIMINE**

BURROUGHS, D.J.

This case arises from the allegedly defective construction of a condominium project in Hingham, Massachusetts (the "Condominium"). Plaintiffs Lennar Northeast Properties, Inc., d/b/a Lennar Northeast Urban, and Hingham Holdings, LLC (collectively, "Lennar") developed and own the Condominium. [ECF No. 82 ¶ 1]. Defendant Barton Partners Architects Planners Inc. ("BAP") designed the Condominium, and Defendant Building Engineering Resources Inc. engineered it. [Id.]. Defendants Highland Carpentry Inc., U.S. Framing Inc., USFNE LLC, F.M. Home Improvement, Inc. ("F.M. Home"), and Archer Exteriors, Inc. ("Archer") were subcontracted to work on certain aspects of the Condominium. [Id.].

Currently before the Court are six fully-briefed motions in limine, [ECF Nos. 168, 172, 173, 176, 186, 193], and two additional motions in limine that the Court is prepared to rule on

even without full briefing, [ECF Nos. 169, 170].[1] For the reasons set forth below, ECF Nos. 168, 172, 173, and 176 are <u>DENIED</u>, ECF Nos. 169 and 170 are <u>DENIED</u> with leave to renew, and ECF Nos. 186 and 193 are <u>GRANTED</u> in part.

## I.  DISCUSSION

The Court assumes the parties' familiarity with the factual allegations contained in Lennar's operative complaint, [ECF No. 82].  In sum, Lennar alleges that the defendants provided shoddy work on the Condominium, which cost Lennar a significant amount of money to fix.  [<u>Id.</u> ¶ 31].

### A.  ECF No. 168

BAP seeks an order: (1) precluding Lennar from offering expert testimony because it failed to timely disclose its expert witnesses; (2) prohibiting any non-architect from offering expert testimony as to BAP's standard of care as an architect; and (3) preventing Lennar's experts from testifying regarding building conditions at the Condominium in 2015 and 2016 because they did not conduct a site visit until 2017.  [ECF No. 168].

First, as to allegedly untimely disclosure, the principal purpose of Federal Rule of Civil Procedure 26(a)(2)'s expert disclosure requirement is to provide the opposing party with an opportunity to prepare cross-examination and/or obtain an expert of its own.  See <u>Chartier v. Brabender Technologie, Inc.</u>, No. 08-cv-40237, 2011 WL 4732940, at *7 (D. Mass. Oct. 5, 2011).  Here, BAP has had ample time to prepare cross-examination and/or obtain its own expert

---

[1] On February 4, 2021, the parties filed a joint status report stating that although several of the instant motions were originally filed by parties who have settled and will soon be dismissed from the litigation, at least one party still involved in the litigation has joined each motion. [ECF No. 229 at 1 n.1].  Based on this representation, the Court will rule on the motions.  For ease, with respect to each motion, the Court will refer only to the moving party and will not list all parties that have joined each motion.

because it has known about the two experts that Lennar currently intends to call since December 2018.  See [ECF No. 66 (disclosing Mr. LaMalva and Mr. Cammalleri on Dec. 27, 2018)].  In the absence of prejudice, the Court will not impose the significant sanction of excluding expert testimony.  See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 78 (1st Cir. 2009) (listing prejudice among the factors to be considered when deciding whether to preclude expert testimony based on faulty disclosure).  Further, if Mr. Cammalleri's schedule does not permit him to testify at trial, Mr. Tomlinson may testify in his stead assuming he adopts Mr. Cammalleri's opinion.  Where (1) BAP has had Mr. Cammalleri's expert report since January 2019, see [ECF No. 168-4; ECF No. 202 at 3], (2) Mr. Tomlinson will adopt Mr. Cammalleri's report verbatim, see [ECF No. 202 at 7], and (3) BAP has known about Mr. Tomlinson for nearly a year and therefore has had plenty of time to prepare Tomlinson-specific cross-examination materials, see [ECF No. 162 (disclosing Mr. Tomlinson on Feb. 24, 2020)], substituting Mr. Tomlinson for Mr. Cammalleri would not cause BAP any prejudice.  See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1, 9–11 (1st Cir. 2001) (finding no prejudice where substitute expert offered similar testimony and was not unknown to opposing party).

      Second, given that Mr. Cammalleri is a licensed architect and will be permitted to testify, BAP's request to prohibit any non-architect from offering expert testimony as to BAP's standard of care as an architect is likely moot.  Still, the Court notes that, should Mr. Tomlinson testify in Mr. Cammalleri's place, the fact that he is not a licensed architect will not, on its own, preclude him from testifying regarding BAP's standard of care.  Federal Rule of Evidence 702 states that an individual may be qualified to serve as an expert witness based on "knowledge, skill, experience, training, *or* education."  Fed. R. Evid. 702 (emphasis added).  BAP may, of course,

challenge Mr. Tomlinson's knowledge and experience on cross examination to limit the weight of his testimony, but the Court will not exclude his testimony solely because he is not a licensed architect.

Third, the fact that Lennar's experts were "not present for the repairs of the snow infiltration issues" at the Condominium in 2015 and 2016 does not mean that they cannot offer expert testimony regarding the condition of the Condominium at those times. Federal Rule of Evidence 703 permits experts to testify based on "facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Accordingly, that Lennar's experts did not personally observe the building conditions does not prevent them from offering expert opinions based on those conditions as long as they have been made aware of them. Here, Lennar's experts reviewed "documents and photos . . . to understand . . . repairs made by or on behalf of Lennar to address the freezing of sprinkler pipes and snow infiltration issued [sic]." [ECF No. 168-4 at 6]. The accuracy and reliability of the documents and photographs that Lennar's experts relied upon go to the weight, not admissibility, of their opinions, and BAP can probe the accuracy and reliability of those documents and photographs during cross-examination.

Thus, BAP's motion, [ECF No. 168], is <u>DENIED</u>.

**B.     ECF No. 169**

BAP seeks an order precluding Lennar from advancing the theory that BAP acted unfairly or deceptively in violation of Massachusetts General Laws, Chapter 93A. [ECF No. 169]. The Court will not assume that there is or is not evidence on a particular legal theory prior to trial. That being said, the parties are cautioned against referring to any legal theory for which there is no factual support. A motion in limine is not the proper vehicle for moving to dismiss a count based on insufficient evidence. The Court will, if asked, either after the close of Lennar's

case or at the close of evidence, rule on whether a count should go to the jury. Lennar is encouraged to review its Chapter 93A theory and dismiss the count if appropriate.

Thus, BAP's motion, [ECF No. 169], is DENIED with leave to renew at trial.

### C. ECF No. 170

F.M. Home seeks an order prohibiting Lennar from advancing its Chapter 93A claim at trial. [ECF No. 170]. For the reasons articulated above in connection with BAP's nearly-identical motion, see supra Section I.B, F.M. Home's motion, [ECF No. 170], is DENIED with leave to renew at trial.

### D. ECF No. 172

F.M. Home seeks an order precluding Lennar's experts from relying on certain photographs and from offering testimony regarding building conditions at the Condominium in 2015 and 2016. [ECF No. 172]. As discussed above, the reliability and accuracy of the information upon which Lennar's experts relied in forming their opinions go to the weight, not admissibility, of their opinions. During cross-examination, F.M. Home, like BAP, can attempt to undermine Lennar's experts' opinions based on purported issues with the photographs underlying those opinions. Further, Lennar will have to properly authenticate each photograph that it seeks to independently admit into evidence. At trial, F.M. Home is free to oppose the admission of photographs on a photograph-by-photograph basis and, via cross-examination, can address any purported deficiencies with the photographs that have been admitted over its objections. The Court will not, however, issue a blanket pre-trial decision excluding them.

Thus, F.M. Home's motion, [ECF No. 172], is DENIED.

E.    ECF No. 173

F.M. Home seeks an order precluding Mr. Tomlinson's testimony because Lennar did not timely disclose him as an expert. [ECF No. 173]. For the reasons noted above, supra Section I.A., F.M. Home's motion is DENIED. Because Mr. Tomlinson, if called, would offer testimony indistinguishable from that of Mr. Cammalleri and F.M. Home has been aware that Mr. Tomlinson might testify for nearly a year, F.M. Home will suffer no prejudice were Mr. Tomlinson to testify instead of Mr. Cammalleri.

F.    ECF No. 176

F.M. Home seeks an order precluding Lennar from introducing certain photographs at trial. [ECF No. 176]. For the reasons noted above, supra Section I.D, F.M. Home's motion is DENIED.[2] At trial, F.M. Home can oppose the admission of, and seek to undermine the probative value of, photographs on a photograph-by-photograph basis.

G.    ECF No. 186

F.M. Home seeks an order precluding Lennar from referring to and/or introducing into evidence indemnification language contained in Lennar's contract with F.M. Home because it violates Massachusetts General Laws, ch. 149 § 29C ("§ 29C"), [ECF No. 186], which states that "[a]ny provision for or in connection with a contract for construction . . . which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void." Mass. Gen. Laws,

---

[2] F.M. Home also objects to the lack of specificity with which Lennar has identified the photographs it will seek to admit. [ECF No. 176 at 1–2]. The Court assumes that when the time comes for the parties to exchange exhibit lists, Lennar will identify the photographs with sufficient specificity.

ch. 149, § 29C.  F.M. Home's contract with Lennar contains the following indemnification provision:

> To the fullest extent permitted by applicable law, . . . subcontractor hereby agrees to unconditionally defend, indemnify and hold harmless contractor, its parent, affiliates, subsidiaries, partners, joint venturers, officers, directors, shareholders, agents, employees, insurers, sureties, any owner of real property improved or alleged to have been improved by the subcontractor, or any of them (Collectively "Indemnitees") against any and all civil or criminal liabilities, costs, expenses, claims, demands, causes of action, lien claims, threats of liens, stop notices, fund trapping notices, bond claims, penalties, fines, citations, losses, and damages (including court costs, attorneys' fees and paraprofessional fees, and costs of investigation), of any nature, kind, or description, arising out of, in connection with, caused by, alleged to have been caused by, or resulting from, directly or indirectly, in whole or in part, (1) the work, labor, materials, equipment or services performed or supplied by or alleged to have been performed or supplied by subcontractor or any of its sub-subcontractors, (2) any act or omission of subcontractor or any of its subcontractors, or (3) any act or omission of contractor or contractor's other subcontractors, sub-subcontractors, or suppliers or any of their employees, agents, invitees or any person acting by, through or under contractor or contractor's other subcontractors, sub-subcontractors, or suppliers (collectively "Liabilities").  The obligations of subcontractor under this indemnification shall apply to liabilities even if such liabilities arise from or are attributed to the concurrent negligence of any indemnitee. Notwithstanding the foregoing, subcontractor shall not be obligated under this agreement to indemnify the indemnitees to the extent such liabilities result from the sole negligence or willful misconduct of any indemnitees. . . . It is specifically agreed with respect to any legal limitations now or hereafter in effect and affecting the validity or enforceability of the indemnification obligation under this section, that such legal limitations are made a part of the indemnification obligation and shall operate to amend the indemnification obligation to the minimum extent necessary to bring the provision into conformity with the requirements of such limitations, and as so modified, the indemnification obligation shall continue in full force and effect, even after completion of the work or termination of this agreement. . . .

[ECF No. 186-1 at 2–3].

According to F.M. Home, because the indemnification provision purports to require F.M. Home to indemnify Lennar for damages "alleged to have been caused by," as opposed to only claims actually caused by, F.M. Home, it violates § 29C and is therefore void.  [ECF No. 186]. In response, Lennar points to the indemnification provision's savings clauses, arguing that they correct any alleged over-breadth and render the provision valid and enforceable.  [ECF No. 204].

7

As an initial matter, the Court agrees that the indemnification provision, as drafted, imposes obligations upon F.M. Home that are inconsistent with § 29C. In addition to the problematic "alleged to have been caused by" language identified by F.M. Home—which impermissibly premises the duty to indemnify on the mere allegation that F.M. Home caused damage—the provision also purports to require F.M. Home to indemnify Lennar for damages caused by "any act or omission of [Lennar] or [Lennar]'s other subcontractors, sub-subcontractors, or suppliers or any of their employees, agents, invitees or any person acting by, through or under [Lennar] or [Lennar]'s other subcontractors, sub-subcontractors, or suppliers" without regard to whether F.M. Home was also a cause. [ECF No. 186-1 at 3]. Thus, as drafted, the provision contemplates indemnification for "injuries not caused in any part by F.M. Home," which is precisely what § 29C proscribes. Hillside FXF, LLC v. Premier Design + Build Grp., LLC, No. 2013-cv-03831, 2016 WL 7735870, at *3 (Mass. Super. Ct. Dec. 1, 2016).

In Sheehan v. Modern Continental/Healy, the Massachusetts Appeals Court encountered an indemnification provision that purported to require the subcontractor to indemnify the contractor for claims "alleged to be caused" by the subcontractor, which it deemed violative of § 29C. 822 N.E.2d 305, 306 (Mass. App. Ct. 2005). Nevertheless, because of a savings clause nearly identical to the one here, the court declined to strike the entire provision, instead merely excising the offending portion to bring it into conformity with § 29C. Id. Other Massachusetts courts have found that savings clauses in indemnification provisions prevent a finding that they are void under § 29C. See, e.g., Callahan v. A.J. Welch Equip. Corp., 634 N.E.2d 134, 137 (Mass. App. Ct. 1994) (finding indemnification provision valid under § 29C where it imposed obligation "to the fullest extent permitted by law"); cf. MacFarland v. RCS Grp., Inc., No. 04-cv-01530, 2006 WL 664209, at *2 (Mass. App. Ct. Mar. 16, 2006) (noting that "an indemnity clause

contain[ing] language that violates § 29C . . . can be considered valid if there is a 'savings clause' in the contract" but finding that the contract did not contain a valid savings clause). Here, the contracting parties' desire to save the indemnification provision is clearly evidenced by their decision to include both the introductory phrase "[t]o the fullest extent permitted by applicable law" and the following sentence in the indemnification section of their contract:

> It is specifically agreed with respect to any legal limitations now or hereafter in effect and affecting the validity or enforceability of the indemnification obligation under this section, that such legal limitations are made a part of the indemnification obligation and shall operate to amend the indemnification obligation to the minimum extent necessary to bring the provision into conformity with the requirements of such limitations, and as so modified, the indemnification obligation shall continue in full force and effect, even after completion of the work or termination of this agreement.

[ECF No. 186-1 at 2–3]; contra McFarland, 2006 WL 664209, at *3–4 (rejecting savings clause because there was no evidence that the parties intended for the language to apply specifically to the indemnification provision). Under these circumstances, the Court will not diverge from this line of cases to find that the entire indemnification provision is void despite the indemnification-specific savings clause. Accordingly, the Court will excise any language from the indemnification provision that "require[s] [F.M. Home] to indemnify [Lennar] for injury to persons or damage not caused by [F.M. Home] or its employees, agents or subcontractors." Mass. Gen. Laws, ch. 149, § 29C. At trial, the parties will be permitted to refer to the indemnification provision, but the Court will provide a limiting instruction regarding the permissible scope of F.M. Home's indemnification obligations under § 29C and/or redact as appropriate for the benefit of the jury.

Thus, F.M. Home's motion, [ECF No. 186], is GRANTED in part. Insofar as the indemnification provision imposes an obligation on F.M. Home to indemnify Lennar for damage

it did not cause, it is void under § 29C. Nonetheless, because of the savings clause, the Court declines to strike the entire provision.

H.     ECF No. 193

Archer seeks an order precluding Lennar from introducing any evidence of the indemnification provision contained in the contract between Lennar and Archer because it violates § 29C. [ECF No. 193]. Archer's contract with Lennar contains the following indemnification provision:

> [T]o the fullest extent permitted by law, Subcontractor shall indemnify Contractor and its officers, directors, agents and employees for and hold Contractor and its officers, directors, agents and employees harmless from any damage, injury, loss, liability or expense (including, but not limited to, attorney and expert fees) incurred by Contractor as a direct or indirect result of the Work. However, Subcontractor shall not be obligated to . . . indemnify Contractor for or hold Contractor harmless from any damage, injury, loss, liability or expense incurred by Contractor resulting solely from the negligence or willful misconduct of Contractor or others and not in any way resulting from any act or omission of Subcontractor.

[ECF No. 193-1 at 7–8].

Archer asserts that, notwithstanding the savings clause, the indemnification provision is void because it imposes on Archer obligations to indemnify that are broader than § 29C permits. [ECF No. 193 at 4–5]. Specifically, Archer argues that, under the indemnification provision, "it is possible that a subcontractor's acts or omission[s] may contribute to damages but not be the proximate cause of such damages," which, in its view, violates § 29C. [ECF No. 193 at 4]. In advancing this argument, however, Archer reads a proximate cause requirement into § 29C that does not exist. Nothing in the plain language of the statute requires the subcontractor to be the proximate cause, as opposed to a but-for cause, for indemnification to be lawful. Nor have Massachusetts courts imposed such a requirement. To the contrary, they have consistently held that

10

> Section 29C only voids contractual indemnity provisions which require indemnification for injuries not caused by the subcontractor. General contractors and owners are prohibited by § 29C from receiving indemnity for their sole causal negligence, but § 29C does not proscribe full indemnification when the conduct of the subcontractor is only a partial cause of the injury. Otherwise put, § 29C does not prohibit contractual indemnity arrangements whereby the subcontractor agrees to assume indemnity obligations for the entire liability when both the subcontractor and the general contractor or owner are causally negligent. Had the Legislature intended thus to abrogate the common law, which long permitted by written contract full indemnification of an indemnitee even where the indemnitee was negligent, it would have done so explicitly.

Herson v. New Bos. Garden Corp., 667 N.E.2d 907, 914–15 (Mass. App. Ct. 1996) (citations omitted); see Johnson v. Modern Continental Constr. Co., 731 N.E.2d 96, 99 (Mass. App. Ct. 2000) ("The language of G.L. c. 149, § 29C, no longer requires a finding of the subcontractor's negligence in order to trigger a subcontractor's liability under an indemnity provision in a construction subcontract."); MacFarland, 2006 WL 664209, at *3 ("Indemnity provisions run afoul of § 29C only when the subcontractor must indemnify another party for damages caused solely by that party.").

Still, as drafted, the indemnification provision relieves Archer of its indemnification obligation only if the "damage, injury, loss, liability or expense" "result[s] [(1)] solely from the negligence or willful misconduct of [Lennar] or others and [(2)] not in any way . . . from any act or omission of [Archer]." [ECF No. 193-1 at 7]. Under § 29C, if Archer did not cause the damage, injury, loss, liability, or expense, it cannot be required to indemnify Lennar irrespective of whether the party that did cause the damage, injury, loss, liability, or expense did so negligently or willfully. In other words, the indemnification provision imposes an additional condition (i.e., that whoever caused the damage must have done so negligently or willfully) that is inconsistent with § 29C. Accordingly, given the savings clause, the Court will excise any language from the indemnification provision inconsistent with § 29C. At trial, the parties will be permitted to refer to the indemnification provision, but the Court will provide a limiting

11

instruction concerning § 29C's limitations on a subcontractor's indemnification obligations and/or redact as appropriate for the benefit of the jury.

Thus, Archer's motion, [ECF No. 193], is GRANTED in part. To the extent the indemnification provision imposes an obligation to indemnify inconsistent with § 29C, it is void. Nonetheless, because of the savings clause, the Court declines to strike the whole provision.

## II.     CONCLUSION

Accordingly, for the reasons set forth above, four of the motions in limine, [ECF Nos. 168, 172, 173, 176], are DENIED, two, [ECF Nos. 169, 170], are DENIED with leave to renew, and two, [ECF Nos. 186, 193], are GRANTED in part.

**SO ORDERED.**

February 12, 2021                                            /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE