UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LENNAR NORTHEAST PROPERTIES, INC. d/b/a LENNAR NORTHEAST URBAN, and LENNAR HINGHAM HOLDINGS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> BARTON PARTNERS ARCHITECTS PLANNERS INC., et al., <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> *    Civil Action No. 16-cv-12330-ADB <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

## MEMORANDUM AND ORDER ON LENNAR'S MOTION TO AMEND AND ARCHER'S MOTION FOR PARTIAL SUMMARY JUDGMENT

BURROUGHS, D.J.

This case arises from the allegedly defective construction of a condominium project in Hingham, Massachusetts (the "Condominium"). Plaintiffs Lennar Northeast Properties, Inc., d/b/a Lennar Northeast Urban, and Lennar Hingham Holdings, LLC (collectively, "Lennar") developed and own the Condominium. [ECF No. 82 ¶ 1]. Defendant Barton Partners Architects Planners Inc. designed the Condominium, and Defendant Building Engineering Resources Inc. engineered it. [Id.]. Defendants Highland Carpentry Inc., U.S. Framing Inc., USFNE, LLC, F.M. Home Improvement, Inc. ("F.M. Home"), and Archer Exteriors, Inc. ("Archer") were subcontracted to work on certain aspects of the Condominium. [Id.].

Currently before the Court are Lennar's motion to amend its complaint, [ECF No. 226], and Archer's motion for partial summary judgment, [ECF No. 223]. For the reasons set forth

below, Lennar's motion is GRANTED, and Archer's motion is GRANTED in part and DENIED in part.

I.     BACKGROUND

   A.     Factual Background

The Court assumes the parties' familiarity with the facts of this case and will therefore provide only a brief factual summary as germane to the instant motions.

The Condominium consists of multiple buildings, sixteen of which—Buildings 2, 3, 5, 13, 14, 15, 16, 17, 19, 20, 23, 24, 25, 26, 27, and 28—are implicated by Archer's motion. [ECF No. 224 at 2]. Each building, except Building 13, was completed and open for use at least six years before Lennar filed its amended complaint on April 29, 2019. [ECF No. 245 ¶ 9; ECF No. 82 (amended complaint)]. Building 13 consists of eight units; the certificate of occupancy for the eighth unit was issued after April 29, 2013. [ECF No. 245 ¶¶ 8, 10].

Archer's construction contract with Lennar includes an indemnity provision, which provides as follows:

> Subcontractor shall defend Contractor and its officers, directors, agents and employees against any claim of any kind or nature made against Contractor and its officers, directors, agents and employees by anyone (other than Subcontractor) as a direct or indirect result of the Work. The monetary limitation on the extent of the limitation that bears a reasonable commercial relationship to the Contract, as defined by Section 725.06, Florida Statutes, is the Contract Price unless the Contract Price is less than one million dollars, then the monetary limitation is one million dollars. This provision is incorporated by reference into the project specifications or bid documents, if any. In addition, to the fullest extent permitted by law, Subcontractor shall indemnify Contractor and its officers, directors, agents and employees for and hold Contractor and its officers, directors, agents and employees harmless from any damage, injury, loss, liability or expense (including, but not limited to, attorney and expert fees) incurred by Contractor as a direct or indirect result of the Work. However, Subcontractor shall not be obligated to defend Contractor against any claim or indemnify Contractor for or hold Contractor harmless from any damage, injury, loss, liability or expense incurred by Contractor resulting solely from the negligence or willful misconduct of Contractor or others and not in any way resulting from any act or omission of Subcontractor. Payment

2

> to Subcontractor by Contractor of any sums purportedly due under the Contract shall not be a condition precedent to Contractor's right to enforce Subcontractor's obligations hereunder to defend, indemnify and/or hold harmless Contractor. Subcontractor's obligations to defend, indemnify and hold harmless Contractor shall survive the expiration and termination of the Contract and shall continue until such time as all actions against Contractor arising directly or indirectly out of the Work are barred by applicable statutes of limitations. Subcontractor's obligation hereunder to defend Contractor is entirely separate from and independent of Subcontractor's obligation hereunder to indemnify and hold harmless Contractor and applies whether Subcontractor's liability has been determined and whether Contractor has incurred any damage, injury, loss, liability or expense as a direct or indirect result of the Work. Subcontractor agrees that during any stage of any claim, mediation, arbitration or lawsuit relating directly or indirectly to the Work, Contractor shall be entitled to summary adjudication of Subcontractor's obligation hereunder to defend Contractor. Subcontractor further agrees that Subcontractor shall reimburse Contractor for Contractor's reasonable attorney fees and other litigation expenses incurred in enforcing Subcontractor's obligations hereunder to defend, indemnify and/or hold harmless Contractor. In any and all claims against Contractor hereunder by any employee of Subcontractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification obligation under this Paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor or any subcontractor under workers' or workmen's compensation acts, disability acts or other employee benefit acts. In addition, in no event shall Subcontractor's obligations hereunder be limited to the extent of any insurance available to or provided by Subcontractor.

[ECF No. 244-7 at 6–7].

### B.     Procedural Background

Lennar filed its amended complaint, which added Archer and the other subcontractors as defendants, on April 29, 2019. [ECF No. 82]. On September 30, 2019, F.M. Home, who has since settled and will soon be dismissed from the case, see [ECF No. 213 at 1], filed a motion for summary judgment, arguing that the Massachusetts Statute of Repose barred Lennar's claims against it, with respect to Buildings 3 and 20, because Lennar's amended complaint was filed more than six years after those buildings were opened. [ECF No. 108]. Lennar opposed the motion, maintaining that (1) the Statute of Repose does not apply to contractual indemnification claims, and (2) Lennar was asserting a contractual indemnification claim against F.M. Home.

3

[ECF No. 121]. On January 22, 2021, the Court granted F.M. Home's motion. [ECF No. 221]. In so doing, the Court observed that Lennar's amended complaint did not explicitly reference indemnification or an indemnification provision, and that Lennar seemed to premise its breach of contract claim on its subcontractors' general failure to provide adequate work. [Id. at 8–11]. Because the Court concluded that all of Lennar's claims sounded in tort, it found those claims barred by the Statute of Repose, insofar as they concerned buildings that were completed more than six years before the amended complaint was filed. [Id. at 2].

On February 1, 2021, Archer moved for partial summary judgment, arguing that the Massachusetts Statute of Repose bars Lennar's claims against it insofar as those claims relate to the sixteen buildings that had been open for more than six years when Lennar filed its amended complaint. [ECF Nos. 223 (motion), 224 (brief)]. The following day, Lennar filed a motion for leave to amend its complaint. [ECF No. 226]. In addition to minor administrative matters (i.e., removing defendants who have settled and claims that it no longer intends to pursue), Lennar seeks to "clearly delineate a cause of action for breach of the contractual indemnity agreement." [Id. at 1]. On March 12, 2021, the parties opposed one another's motions, [ECF Nos. 243, 244], and on March 27, 2021, Archer filed a reply, [ECF No. 248].

After these motions had been filed, but before they were ripe for adjudication, on February 12, 2021, the Court ruled on a number of motions in limine. [ECF No. 231]. As is relevant here, the Court found that the indemnification provision in Archer's contract with Lennar was inconsistent with Massachusetts General Laws Chapter 149, § 29C, which imposes limits on subcontractor indemnification. [Id. at 10–12]. Nevertheless, because of a savings clause contained in the provision, the Court stated that it would permit the parties to refer to the indemnification provision at trial subject to a limiting instruction and/or redactions. [Id.].

## II.     MOTION TO AMEND

### A.     Legal Standard

Where, as here, leave to amend is sought more than twenty-one days after service of the complaint and the opposing party has not consented, a complaint may be amended only by leave of court. In general, leave should be freely given if, in the court's view, justice so requires. The standard may change, though, when—as in this case—the [C]ourt has entered a scheduling order under Federal Rule of Civil Procedure 16(b), which contains, inter alia, a deadline for amendment of the pleadings. In that event, a motion to amend filed outside the parameters set by the scheduling order will be granted only upon a showing of good cause. Such an elevated standard makes perfect sense: without it, scheduling orders would be little more than aspirational statements, to be disregarded by the parties whenever compliance proves inconvenient.

The good cause standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant. In the decisional calculus, the moving party's diligence or lack of diligence serves as the dominant criterion. [T]he longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend. Nor should a court be expected to look kindly upon a plaintiff who seeks belatedly to amend her complaint based on information that [she] had or should have had from the outset of the case.

<u>Miceli v. JetBlue Airways Corp.</u>, 914 F. 3d 73, 86 (1st Cir. 2019) (second and third alterations in original) (internal citations and quotation marks omitted).

### B.     Discussion

Good cause exists for allowing Lennar to amend its complaint.

On September 13, 2019, F.M. Home moved for partial summary judgment based on the Statute of Repose. [ECF No. 108]. Lennar argued that the motion should be denied because its amended complaint stated a contractual indemnification claim, which is not barred by the Statute of Repose. [ECF No. 121 at 1 ("Lennar's primary claim against F.M., however, is for indemnification, which is a contractual claim to which the Statute of Repose does not apply.")].

On January 22, 2021, the Court granted F.M. Home's motion, finding that, in its amended complaint, Lennar had relabeled tort claims based on shoddy construction work as contract claims, but had not actually asserted an indemnification claim. [ECF No. 221]. Accordingly, the Court found that the Massachusetts Statute of Repose barred Lennar's claims, which all sounded in tort, to the extent they related to buildings that had been open for at least six years when Lennar filed its amended complaint. [Id.]. Had the Court considered Lennar's claims to be contractual indemnification claims, the Court would have been bound by the Massachusetts Supreme Judicial Court's ("SJC") decision in Gomes v. Pan American Associates. 549 N.E.2d 1134 (Mass. 1990). In that case, the SJC held that the Massachusetts Statute of Repose does not apply to claims for contractual indemnification. Id. at 1135 ("The gist of Pan Am's action is essentially contractual—the enforcement of a contract of indemnification. The language of the indemnification provision is overwhelmingly contractual. The language of § 2B is exclusively directed to tort actions. . . . The parties freely and intelligently entered into a contract of indemnification. They should be held to it."). Because the Court found that Lennar's claims substantively sounded in tort, Gomes was inapposite.

Ten days after the Court's Order, Lennar filed the instant motion, see [ECF No. 221 (Jan. 22, 2021 Order); ECF No. 226 (Feb. 2, 2021 motion)], seeking to amend its complaint so that it can "clearly delineate a cause of action for breach of the contractual indemnity agreement by the remaining Defendants in light of the Court's recent summary judgment decision concerning the Statute of Repose," [ECF No. 227 at 1–2]. Archer opposes, arguing that Lennar is seeking to "circumvent th[e] Court's recent summary judgment decision." [ECF No. 243 at 1].

The Court begins with Lennar's diligence, which is the "dominant criterion" in the "decisional calculus." Miceli, 914 F.3d at 86. Although this case has been pending for longer

6

than four years, Lennar filed its motion just ten days after the Court issued its Order on F.M. Home's motion for partial summary judgment based on the Statute of Repose. Prior to the issuance of that Order, Lennar may have believed that its amended complaint adequately stated a contractual indemnification claim. Because Lennar filed its motion shortly after the Court's ruling on F.M. Home's motion for partial summary judgment, the Court is unwilling to find that Lennar failed to act diligently in moving to amend the complaint.[1]

With respect to prejudice, Archer would be prejudiced by an amended complaint, which would increase its potential exposure by putting the allegedly defective construction of additional buildings at issue. In other respects, however, there would be little prejudice. First, allowing Lennar's proposed amendments will not, as far as the Court can tell, necessitate additional discovery. Second, because a trial date has not yet been set, there is no risk of significant delay and Archer will have time to prepare a defense, other than the Statute of Repose, to Lennar's indemnification claims. Third, it seems likely that Archer will contest liability related to all of the buildings, and therefore the fact that the trial will involve claims related to additional buildings is unlikely to require a substantial change in trial strategy. See Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy.'" (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998))).

---

[1] The Court is aware that the First Circuit has rejected arguments similar to Lennar's. Trans-Spec Truck Serv., Inc. v. Catepillar Inc., 524 F.3d 315, 327 (1st Cir. 2008) ("The explanation for the delay seems to be simply that Trans–Spec thought that it would prevail on the motion to dismiss without any need to further amend. In that, its calculations were wrong. Nonetheless, Trans–Spec must be bound by the consequences of its litigation strategy."). Still, for the reasons discussed infra, the Court finds that because Lennar is not attempting to end-run the Court's previous Order, its motion to amend should be allowed.

Moreover, and perhaps most importantly, Archer cannot plausibly claim surprise. Throughout this litigation, Lennar's position has been that it is asserting a contractual indemnification claim against Archer. Additionally, Archer has acknowledged that claim (and contested it on grounds other than the Statute of Repose). See [ECF No. 85 at 10 (Archer asserting, as an affirmative defense in its answer, that "Lennar's indemnification provision is void under M.G.L. c. 149, § 29C and applicable law"); ECF No. 193 (moving in limine to preclude Lennar from introducing evidence regarding indemnification because the indemnification provision was void under § 29C)]. Thus, in essence, Lennar now seeks to amend its operative complaint to make it better align with the legal theories that Lennar has been advancing all along and that Archer has been responding to throughout this litigation.[2]

Finally, as a general matter of fairness, the Court believes that allowing Lennar's amendment is the proper course here. As discussed above, the Massachusetts Statue of Repose does not bar indemnification claims.[3] Here, it is undisputed that the parties' "freely and intelligently entered into a contract of indemnification." Gomes, 549 N.E.2d at 1135.

---

[2] The Court notes that Archer has consistently argued that Lennar's indemnification claim is without merit, and that this Order should not be interpreted as a statement regarding the validity of Lennar's claim.

[3] Archer seems to take the position that Gomes is inapposite because Lennar is a plaintiff and indemnification claims are traditionally asserted by defendants against third-party defendants. See [ECF No. 248 at 8–10]. While the Court reserves judgment on the merits of Lennar's indemnification claim, it notes that, as a general matter, there is no presumption against indemnity for *inter se* costs under Massachusetts law. See Caldwell Tanks, Inc. v. Haley & Ward, Inc., 471 F.3d 210, 215–16 (1st Cir. 2006); EdgePoint Capital Holdings, LLC v. Apothecare Pharmacy, LLC, 478 F. Supp. 3d 75, 84 (D. Mass. 2020) ("Under Massachusetts law, indemnification claims are not strictly limited to third party suits and may, in certain circumstances, encompass suits between the indemnitor and indemnitee."). Accordingly, although Archer is free to argue that Lennar's indemnification claim is meritless, the Court will not, at this juncture, preclude Lennar from asserting it merely because it may not ultimately be successful.

Accordingly, to the extent doing so is consistent with Massachusetts law, "[t]hey should be held to it," id., even if Lennar did a sloppy job of articulating its contractual indemnification claim in its amended complaint. This is particularly true where both parties' conduct evidences their mutual understanding that this case involves claims related to the indemnification clause.

In sum, the Court finds that good cause exists, and Lennar's motion to amend, [ECF No. 226], is therefore GRANTED.

### III.      MOTION FOR PARTIAL SUMMARY JUDGMENT[4]

Archer asserts that the Statute of Repose bars Lennar's claims, which all sound in tort, to the extent those claims seek damages related to the sixteen buildings which were completed more than six years prior to Lennar filing its amended complaint. [ECF No. 224].

As an initial matter, Lennar concedes that, its negligence claim (Count IV), insofar as it relates to Buildings 2, 3, 5, 14, 15, 16, 17, 19, 20, 23, 24, 25, 26, 27, and 28, is barred by the Statute of Repose. [ECF No. 244 at 1]. Accordingly, Archer's motion, [ECF No. 223], is GRANTED in part, and Count IV of the amended complaint is dismissed to the extent Lennar seeks damages from Archer in connection with Buildings 2, 3, 5, 14, 15, 16, 17, 19, 20, 23, 24, 25, 26, 27, and 28.

With respect to Building 13, the parties agree that certificates of occupancy were issued for seven of the eight units before April 29, 2013 and that the certificate of occupancy for the

---

[4] For a recitation of the summary judgment standard, the Court refers the reader to its Order on F.M. Home's motion for partial summary judgment. [ECF No. 221 at 4–5].

eighth unit (Unit 1302) was issued in late June 2013.[5]  [ECF No. 245 ¶ 8].  In discussing the

Statute of Repose in the context of multi-building developments, the SJC recently held that:

> Where a condominium development is comprised of multiple buildings, regardless of how many phases of the development there may be or how many buildings are within each phase, each building constitutes a discrete "improvement" for purposes of G. L. c. 260, § 2B, such that the opening of each individual building to its intended use, or the substantial completion of the individual building and the taking of possession for occupancy by the owner or owners, triggers the statute of repose under § 2B with respect to the common areas and limited common areas of that building.

D'Allessandro v. Lennar Hingham Holdings, LLC, 156 N.E.3d 197, 203–04 (Mass. 2020).  The SJC added that "the issuance of a certificate (or certificates) of occupancy for each individual building (or for all the units in a building) triggered the statute of repose for the common elements and limited common elements pertaining to that building."  Id. at 202.  Given the parties' agreement that certificates of occupancy for all eight units in Building 13 were not issued until after April 29, 2013, see [ECF No. 245 ¶ 8], the Court finds that there is a genuine dispute of material fact regarding when the Statute of Repose's six-year clock began running for Building 13, see Fed. R. Civ. P. 56(a) (noting that summary judgment is appropriate only where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").  Specifically, the Court finds that there is a triable factual dispute regarding whether, as of April 29, 2013, Building 13 was (1) open for its intended use, and/or (2) substantially complete, with its owner or owners having taken possession.[6]  See D'Allessandro, 156 N.E.3d at 203–04.  Because this dispute precludes

---

[5] The parties disagree regarding when precisely the certificate of occupancy was issued for the eighth unit, [ECF No. 245 ¶ 8], but the dispute is immaterial because they agree that it was after April 29, 2013.

[6] Archer points to affidavits from various architects and engineers indicating that Unit 1302 was "satisfactorily complete" and "read[y] for the Building Department final inspection and

summary judgment regarding Building 13, Archer's motion, [ECF No. 223], as to Building 13 is DENIED.

Finally, in light of the Court's decision on Lennar's motion to amend, supra, Section II.B, the remainder of Archer's motion, [ECF No. 223], is DENIED.  The Statute of Repose does not apply to Lennar's contractual indemnification claim, Gomes, 549 N.E.2d at 1135, and to the extent Lennar's Chapter 93A claim is premised on Archer's unfair and/or deceptive failure to adhere to the terms of its indemnification agreement, that claim is also not subject to the Statute of Repose.[7]

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, Lennar's motion to amend, [ECF No. 226], is GRANTED, and Archer's motion for partial summary judgment, [ECF No. 223], is GRANTED in part and DENIED in part.  Count IV (Negligence) of the amended complaint is dismissed insofar as it seeks damages from Archer in connection with Buildings 2, 3, 5, 14, 15, 16, 17, 19, 20, 23, 24, 25, 26, 27, and 28 because tort claims in connection with those buildings are barred by the Statute of Repose.  Lennar shall file its amended complaint no more than ten (10) days after the entry of this Order.

---

certificate of occupancy" before April 29, 2013. [ECF No. 248-1 at 3–8; ECF No. 248 at 11]. Although such affidavits are relevant to the analysis, they are not dispositive.  See D'Allessandro, 156 N.E.2d at 202 n.13.  Accordingly, notwithstanding these documents, the Court finds that there is a factual dispute regarding whether claims related to Building 13 are barred by the Statute of Repose.

[7] The Court notes that to the extent Lennar's Chapter 93A is premised on Archer's alleged construction defects, that claim sounds in tort and is barred by the Statute of Repose.  See [ECF No. 221 at 11–13 (explaining that where Chapter 93A claims are derivative of tort claims, they too are barred by the Statute of Repose)].

**SO ORDERED.**

March 30, 2021 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE